UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RODOLFO AVELEANO SALINAS, | ) C/A No. 4:07-4149-HFF-TER |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )REPORT AND RECOMMENDATION |
| | ) |
| LEROY CARTLEDGE , WARDEN MCI, | ) |
| | ) |
| Respondent. | ) |

Petitioner, Rodolfo Aveleano Salinas, ("petitioner/Salinas"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on December 27, 2007. Respondent filed a motion for summary judgment on March 26, 2008, along with supporting memorandum. The undersigned issued an order filed March 27, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition of respondent's motion for summary judgment on April 7, 2008.

## I. PROCEDURAL HISTORY

The procedural history as set out by the respondent has not been seriously disputed by the

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the District Judge.

petitioner. Therefore, the undisputed procedural history as stated by the respondent is set forth herein.

The petitioner is presently confined in the South Carolina Department of Corrections. The petitioner was indicted by the Spartanburg County Grand Jury for trafficking in cocaine (01- GS-42-3056). Thomas A.M. Boggs, Esquire, represented the Petitioner. On June 10, 2003, the petitioner proceeded to a jury trial and was found guilty as indicted. The Honorable J. Derham Cole sentenced him to confinement for 30 years and a fine of $200,000.

A timely Notice of Appeal was filed on the petitioner's behalf. The petitioner was represented by Wanda P. Hagler (Carter) of the South Carolina Office of Appellate Defense. On June 22, 2004, counsel submitted a Final Anders Brief of Appellant pursuant to Anders v. California, 386 U.S. 738 (1967). In the brief, counsel raised as the sole arguable ground: "[t]he lower court erred in allowing testimony of appellant's prior drug dealings into evidence at trial."  On June 29, 2004, the petitioner made a pro se application brief. On November 16, 2004, the South Carolina Court of Appeals dismissed the appeal. State v. Salinas, Op. No. 2004-UP-572 (S.C. Ct. App., filed November 16, 2004). The remittitur was issued on December 17, 2004.

Petitioner filed a post-conviction relief application on July 22, 2003 (2003-CP-42-2666).[2] App. pp. 221-226. An evidentiary hearing was convened at the Spartanburg County Courthouse on May 16, 2005. The petitioner alleged that he is being held in custody unlawfully for the following reasons:

> 1.     "I believe that the sentence is unfair and would prefer

---

[2]  A later-filed application (2005-CP-42-1045) was subsequently merged into the original application. App. pp. 227-235.

deportation to Mexico and/or reduce sentence - my crime called for 25 years maximum";

2.    "Not sufficient evidence";

3.    "Improper jury selection";

4.    "Not responsible for nature of crime";

5.    "Conflicting testimony on behalf of law enforcement agency . . . "; and

6.    "I believe jury was preselected to find me guilty prior to the trial."

Prior to the evidentiary hearing, the petitioner also added a claim of ineffective assistance of trial counsel. At the hearing, the petitioner proceeded solely on the ineffective assistance of trial counsel claims. Petitioner was present at the hearing and represented by Joshua M. Henderson, Esquire. The undersigned represented the State ("Respondent"). App. pp. 236-276. By written order dated October 31, 2005, the Honorable Doyet A. Early, III, denied and dismissed the application with prejudice. App. pp. 278-288.

A timely Notice of Appeal was filed. On August 2, 2006, a Petition for Writ of Certiorari was submitted by Deputy Chief Appellate Defender Wanda H. Carter on petitioner's behalf asserting the following ground:

Did the PCR court err in denying petitioner's claim regarding trial counsel's conflict of interest.

Petition, p. 2. The respondent made a Return on December 18, 2006. On October 18, 2007, the Supreme Court of South Carolina entered its letter order that the petition was denied. The remittitur was entered on November 7, 2007.

3

## II. PETITIONER'S GROUNDS FOR RELIEF

In his pro se petition, Salinas makes the following five (5) allegations:

1.    Ineffective Assistance of Counsel for failing to conduct his defense so that Petitioner could participate in his own defense.

    a.    Petitioner did not understand everything that was happening at his trial because his interpreter (Petitioner is Hispanic) could not hear everything that the attorneys, witnesses, and/or judge said. Only after receiving the transcript of the trial and having read same was he able to piece together what happened.

2.    Ineffective Assistance of Counsel for failure to allow Petitioner to testify.

    a.    While Petitioner initially chose not to testify, his decision would have been different had he understood everything that was being said at trial, and the picture that was being painted by the Solicitor. Petitioner believes his attorney owed him a duty to ensure that Petitioner understood everything that was happening, including the impression of guilt that the jury no doubt would be forming in their minds.

3.    Ineffective Assistance of Counsel for failure to arrange for Petitioner's deportation to Mexico.

    a.    Counsel did not adequately explore and inform Petitioner of the possibility of deportation to Mexico, rather than standing trial in South Carolina. Trial attorney limited his attempts to one phone call, even though counsel himself stated at PCR hearing that having Petitioner's case transferred to Federal Court "would have been the best thing to happen to him."

4.    Ineffective Assistance of Counsel for failure to adequately handle jury selection.

    a.    Counsel failed to move to show cause as to why the prosecution struck certain jurors. Counsel should have forced prosecution to provide racially neutral issues/reasons for excusing Hispanic jurors. At PCR hearing trial counsel stated he couldn't remember much about jury selection and the trial transcript does not include the jury selection process. This

                    prejudiced the Petitioner in that racial discrimination occurred.

5.        Ineffective Assistance of Counsel for conflict of interest.

        a.        Counsel originally represented Petitioner and Petitioner's two co-defendants. Counsel subpoenaed Banuelos (co-defendant) for the Petitioner's trial because Petitioner believed Banuelos would claim responsibility for the drugs. Counsel treated Petitioner's case in such a manner as to obtain more favorable consideration for Banuelos. Specifically, Petitioner believes that counsel advised Banuelos not tot take responsibility for the crime because it would hurt his chances of beating his case in a post-conviction proceeding. Banuelos would not be able to claim actual innocence of the crime. As a result, any errors counsel made while representing him would be ruled as non-prejudicial.

(Petition).

---

### III. SUMMARY JUDGMENT

On March 26, 2008, the respondent filed a return and memorandum of law in support of his motion for summary judgment. Petitioner responded to the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## IV.  STANDARD OF REVIEW

Since Salinas filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  Therefore, in addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254.  Under § 2254(d),

6

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id. "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

## V.   DISCUSSION AS TO PROCEDURAL BAR

### A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories

7

rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

## 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2)   An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)   A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)   An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In <u>Ex parte Royall</u>, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

<u>Rose v. Lundy</u>, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, <u>See</u> SCAR 207 and <u>Blakeley v. Rabon</u>, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). <u>See</u> S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. <u>See</u>, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must

9

proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

## 2.Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate

10

court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state

procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac,

456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the

claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be

ignored and the federal court may consider the claim. Where a petitioner has failed to comply with

state procedural requirements and cannot make the required showing(s) of cause and prejudice, the

federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court,

and is precluded by state rules from returning to state court to raise the issue, he has procedurally

bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred

from considering the  filed claim (absent a showing of cause and actual prejudice). In such an

instance, the exhaustion requirement is technically met and the rules of procedural bar apply.

Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman

v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and

George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In the case of Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is

always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

# VI. ANALYSIS

**Motion to hold petition in abeyance**

In his response in opposition to the motion for summary judgment, petitioner makes a motion to hold this petition in abeyance or, in the alternative, to dismiss his petition without prejudice while he files a "a post-conviction relief application alleging ineffective assistance of appellate counsel for failing to preserve said issues for appeal." (Doc. # 18). Petitioner states within this response/motion that "he has not properly preserved all issues for appeal." Respondent filed a response in opposition to this motion. (Doc. #22).

It is recommended that petitioner's motion to hold his petition in abeyance (doc. #19) be denied. Murray, supra, Aice, supra. The issues are technically exhausted as the South Carolina state courts would find them procedurally defaulted if petitioner attempted to raise them now. Further, if petitioner is asserting that he wants to return to state court to raise an issue of ineffective assistance of PCR counsel who failed to raise issues in the PCR appeal to preserve them for review, ineffective assistance of counsel on collateral review is not cause. Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999). Additionally, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under

section 2254." 28 U.S.C.A. 2254(I) (West Supp.2001).[3]

---

## Grounds One, Two, Three, And Four

Respondent argues that petitioner's claims, one through four (1-4), raised in his habeas petition were raised in the PCR hearing and denied but were not raised in the PCR appeal. Respondent asserts that his abandonment of these issues in the PCR appeal precludes its presentation by relitigation in state court under Section 17-27-90 and the mandates of Aice v. State, 305 S.C. 448, 409 S.E.2d 392(1991). Therefore, respondent argues that petitioner has technically satisfied the exhaustion requirement as to Grounds 1-4 because state remedies are no longer available. The undersigned agrees.

In Ground One, petitioner argues that his counsel was ineffective for failing to conduct his defense so that petitioner could participate and that he could not understand everything because his interpreter could not hear everything. This issue was raised at the PCR hearing and denied by the PCR court. (Tr. 280-281). It was not raised in the petition for writ of certiorari.

In Ground Two, petitioner argues that counsel was ineffective for failure to allow petitioner to testify. This issue was raised at PCR and denied by the PCR court. (Tr. 281-282). This issue was not raised in the PCR appeal.

In Ground Three, petitioner argues that counsel was ineffective for failing to arrange his deportation to Mexico. This issue was raised in PCR and denied by the PCR court. (Tr. 282). This issue was not raised in the PCR appeal.

---

[3] Even if the petition was dismissed without prejudice, petitioner may be precluded from bringing' his habeas petition again as it may violate the one-year statute of limitations. See 28 U.S.C. § 2244(d).

In Ground Four, petitioner argues that counsel was ineffective for failing to adequately handle jury selection. Petitioner asserts counsel failed to move to show cause as to why the prosecution struck certain jurors. This issue was raised and denied by the PCR court. (Tr. 283). This issue was not raised in the PCR appeal.

As Grounds 1-4 were not raised in the PCR appeal, respondent argues that these four grounds in this petition are procedurally barred. Therefore, respondent argues that since these claims were not presented to the South Carolina Supreme Court for review and the South Carolina state courts would find them procedurally defaulted if petitioner attempted to raise them now, these claims are procedurally barred in federal habeas corpus. The undersigned agrees.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. See Murray v. Carrier, 477 U.S. 478 (1986)(A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim). Petitioner has failed to demonstrate cause for failing to present these claims to the South Carolina Supreme Court. Furthermore, he has failed to show failure to consider the claims will result in a fundamental miscarriage of justice. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir.1990), *cert. denied,* 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]; Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.), *cert. denied*, 519 U.S. 1016 (1996) [In order

15

to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.]; Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing *Murray v. Carrier,* 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla.1995). Accordingly, it is recommended that Grounds One, Two, Three, and Four be dismissed.

**Ground Five**

Respondent asserts that Ground Five in petitioner's habeas petition is fully exhausted in that it was raised in the PCR court, ruled upon by the PCR judge, and raised in the PCR appeal.

In Ground Five of the habeas petition, petitioner argues that his counsel was ineffective due to an alleged conflict of interest with a co-defendant and for failing to call that co-defendant to testify. Petitioner argues that counsel originally represented petitioner and petitioner's two co-defendants. Petitioner asserts that he believed one of the co-defendants, Banuelos, would testify and claim responsibility for the drugs if subpoenaed. Petitioner argues that he believes counsel advised Banuelos not to take responsibility for the crime because it would hurt Banuelos' chances in his own PCR hearing in that he would then not be able to claim innocense.

The Sixth Amendment guarantees an accused the right to effective assistance of counsel, see Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and an essential aspect of this right is a lawyer "unhindered by conflicts of interest. Mickens v. Taylor, 240 F.3d 348, 355 (4th Cir.2001) (en banc), aff'd, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002);

16

see also Cuyler v. Sullivan, 446 U.S. 335, 345-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The mere fact of joint representation does not per se establish the denial of effective assistance of counsel. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The substance of a conflict of interest claim is analyzed by determining whether there was "an actual conflict of interest [that] adversely affected his attorney's performance." Jackson v. State, 329 S.C. 345, 495 S.E.2d 768, 773 (S.C.1998); Mickens, 535 U.S. at 166, 171-74. See also Cuyler, 446 U.S. at 348. This standard is different than the standard applied to a claim for ineffective assistance of counsel. In order to show ineffective assistance of counsel, a claimant generally must demonstrate that his lawyer afforded him defective representation and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, when counsel is burdened by an actual conflict of interest, he "breaches the duty of loyalty, perhaps the most basic of counsel's duties." Id. at 692. In this situation, a defendant need not show prejudice due to the inherent seriousness of the breach and the difficulty in "measur[ing] the precise effect on the defense of representation corrupted by conflicting interests." Id. Rather, "[p]rejudice is presumed ... if the defendant demonstrates that counsel 'actively represented conflicting interests' and that an 'actual conflict of interest adversely affected his lawyer's performance.' " Id. at 692 (quoting Cuyler, 446 U.S. at 348) (internal quotations omitted).

To obtain relief under this theory, a defendant must demonstrate both (1) an actual conflict of interest-possible or potential conflicts will not satisfy this requirement- *and* (2) that the conflict significantly affected counsel's performance. Mickens, 240 F.3d at 355 (discussing three part test for establishing whether an actual conflict of interest caused and adverse effect). If a defendant establishes both of these two elements, prejudice is presumed. If however, a defendant fails to

17

establish either of these two elements, then the conflict of interest claim necessarily fails. See Mickens, 535 U.S. at 170-75; Rubin v. Gee, 292 F.3d 396,401 (4th Cir.2002); Beaver v. Thompson, 93 F.3d 1186, 1192 (4th Cir.1996) ("To prevail on a claim of conflict of interest, [the petitioner] must present convincing evidence of an actual conflict and a resulting adverse effect on performance.") (citing Sumner v. Mata, 449 U.S. 539, 550, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)). An adverse effect cannot be presumed solely from the existence of a conflict of interest. See Mickens, 535 U.S. at 170-75; Rubin, 292 F.3d at 401.

A criminal defendant may waive this right by choosing to proceed to trial with an attorney who has an adverse conflict of interest, so long as the waiver is voluntary, knowing, and intelligent. See Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (an effective waiver of a constitutional right requires that a waiver must be an "intentional relinquishment or abandonment of a known right").

A determination that defendants have waived the right to conflict-free counsel disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflicts of interest. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused . . .  A defendant's waiver must be established by clear, unequivocal, and unambiguous language. The record should show, in some way, that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel. United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir.1993) (quotations and citations omitted).

Even though issues pertaining to a claim of ineffective assistance of counsel due to an alleged

18

conflict of interest is not procedurally defaulted, petitioner fails to show the PCR court's findings are contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence in the state court proceedings. A review of the PCR order reveals the PCR court found the following with regard to this issue:

> Counsel testified that he originally represented Banuelos and agreed to also represent the Applicant and Sambrano, another co-defendant, when all three were going to plead guilty. According to Counsel, he discussed the conflict possibilities with the Applicant and Banuelos and both agreed the drugs belonged to Banuelos but the Applicant was involved in the transaction. When the Applicant and Sambrano decided not to plead, Counsel was relieved of his representation of them. Counsel continued to represent Banuelos through two mistrials. Banuelos subsequently hired another attorney, and Counsel was relieved. Banuelos proceeded to the third trial with the other attorney and was convicted. A few months after Banuelos' conviction, the applicant's brother re-retained Counsel to represent the Applicant. Counsel explained he did not believe he had a conflict of interest when the Applicant re-retained him.

> Counsel further testified that he subpoenaed Banuelos for the Applicant's trial because the Applicant had believed Banuelos would claim all responsibility. However, Counsel explained that he interviewed Banuelos prior to the trial and Banuelos told him "If I tell the truth they'll convict Salinas [the applicant]." Therefore, Counsel stated he did not call Banuelos to testify because he would not have been helpful to the Applicant's defense.
>
> . . .

> First, this Court finds that the Applicant in effect waived any potential conflict issue. Counsel testified that he initially discussed possible conflicts with the Applicant and Banuelos both their stories were the same. Moreover, the Applicant sought out Counsel's services after Banuelos was convicted, presumably because Counsel had managed to get Banuelos two mistrials and when Banuelos retained a different attorney for his third trial he was convicted.

> Even if there was no adequate waiver when Counsel was re-retained, this Court finds that the Applicant failed to show any actual conflict of interest resulted in Counsel's representation of him when Counsel represented his co-defendants previously. As a preliminary matter, Counsel did not jointly or simultaneously represent the Applicant and Banuelos at this stage, and their stories were consistent. Counsel also testified that he did not believe a conflict existed when the applicant re-retained him. The Applicant also failed to point to any actual conflict. Nothing in the record illustrates

the potential conflict ever ripened into an actual conflict that caused Counsel to treat the Applicant's case in such a manner as to obtain more favorable consideration for Banuelos. The assertion that Counsel failed to take some action on the Applicant's behalf for fear of injuring Banuelos, who he no longer represented, who he did not represent at trial, and who had already been convicted, is mere speculation and is insufficient. In fact, Counsel had subpoened Banuelos to testify but ultimately determined his testimony would not be beneficial. The trail transcript reflects that the Applicant did not want Counsel to call any witnesses. The Applicant also failed to present any testimony from Banuelos at the PCR hearing to support this theory. Moreover, Counsel pursued a defense at trial that the drugs belonged to Barnuelos and the Applicant was merely present. Therefore, there is no proof that an actual conflict of interest as to the Applicant ever materialized.

This Court further finds that the Applicant was not prejudiced by any alleged deficient representation because there was overwhelming evidence of the Applicant's guilt. . . . At the Applicant's trial, Rocky Cordell, an undercover police officer, testified that he went to meet Banuelos to buy cocaine, that when he arrived both Banuelos and the Applicant were there, and the Applicant had handed him [the officer] the drugs during the transaction. Moreover, two other police officers had listened to the transaction and confirmed that both Banuelos and the Applicant were involved in the transaction. Regardless of who the drugs belonged to, the testimony was sufficient to prove the Applicant guilty of trafficking cocaine under, at the very least, the theory of accomplice liability.

With respect to Counsel's failure to call Banuelos to testify, this Court further finds that the Applicant failed to show that Counsel's performance in this regard was deficient. Counsel articulate a sound strategic reason for not calling the co-defendant as a witness since Banuelos had told him that a jury would convict the Applicant if he [Banuelos] told the truth.. . .

This Court also finds that the Applicant failed to carry his burden of proof to show reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged deficient representation. Johnson v. State. Specifically, Banuelos did not testify at the PCR hearing. . . Further Banuelos' purported testimony appears to be merely cumulative to Officer Cordell's testimony. Regardless, there was also overwhelming evidence of guilt.

In summary, the Applicant failed to prove an actual conflict of interest existed. The Applicant also failed to prove he was prejudiced. Counsel was also not ineffective for failing to call Banuelos to the stand. Accordingly, this Court finds that both of these claims of ineffective assistance of counsel must be denied and dismissed with prejudice.

20

(Tr. 283-288).

As discussed previously, "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The PCR court found trial counsel's testimony to be credible. Petitioner has not rebutted this presumption by setting forth clear and convincing evidence. Therefore, the undersigned does not find that the PCR court's determination of the facts is contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence in the state court proceedings.

Assuming the petitioner did not waive any conflict, the petitioner failed to establish "an actual conflict of interest [that] adversely affected his attorney's performance." Jackson, 304 U.S. at 464; Mickens, 535 U.S. at 166, 171-74. Petitioner has not pointed to any actual conflict, and the record does not demonstrate that any potential conflict became an actual conflict that caused counsel to be ineffective. Petitioner's allegation that Counsel failed to have Banuelos testify because counsel did not want Banuelos to hurt his chances at PCR is mere speculation. Counsel did not currently represent Banuelos and did not represent him at the trial in which he was convicted. As found by the PCR court, Counsel had subpoenaed Banuelos to testify but, after speaking with him prior to trial, determined that his testimony would not be beneficial to petitioner. Petitioner has not rebutted this. Additionally, as the PCR court determined, counsel pursued a defense at trial that the drugs belonged to Banuelos and petitioner was merely present during the drug buy. Additionally, petitioner did not present any testimony from Banuelos at the PCR hearing to support his allegations. Petitioner has failed to show there was an actual conflict. The finding that this did not constitute an actual conflict

21

is supported by a contrast of the present case to the factual scenario presented to the Supreme Court

in <u>Wood v. Georgia</u>, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). As the Court

subsequently explained in <u>Mickens</u>:

> [I]n *Wood* [ . . . ], three indigent defendants convicted of distributing
> obscene materials had their probation revoked for failure to make the
> requisite $500 monthly payments on their $5,000 fines. We granted
> certiorari to consider whether this violated the Equal Protection
> Clause, but during the course of our consideration certain disturbing
> circumstances came to our attention: At the probation-revocation
> hearing (as at all times since their arrest) the defendants had been
> represented by the lawyer for their employer (the owner of the
> business that purveyed the obscenity), and their employer paid the
> attorney's fees. The employer had promised his employees he would
> pay their fines, and had generally kept that promise but had not done
> so in these defendants' case. This record suggested that the employer's
> interest in establishing a favorable equal-protection precedent
> (reducing the fines he would have to pay for his indigent employees
> in the future) diverged from the defendants' interest in obtaining
> leniency or paying lesser fines to avoid imprisonment. Moreover, the
> possibility that counsel was actively representing the conflicting
> interests of employer and defendants "was sufficiently apparent at the
> time of the revocation hearing to impose upon the court a duty to
> inquire further." <u>Id</u>. at 272, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d
> 220. Because "[o]n the record before us, we [could not] be sure
> whether counsel was influenced in his basic strategic decisions by the
> interests of the employer who hired him," *ibid.,* we remanded for the
> trial court "to determine whether the conflict of interest that this
> record strongly suggests actually existed," <u>Id</u>. at 273, 450 U.S. 261,
> 101 S.Ct. 1097, 67 L.Ed.2d 220.

<u>Mickens</u>, 535 U.S. at 169-70.

Because petitioner fails to create an issue of fact as to the <u>Mickens</u> factors, this claim by

petitioner, Ground Five, lacks merit. The undersigned concludes that the record supports the state

PCR court's holding and it is not contrary to clearly established federal law or an unreasonable

determination of the facts in light of the evidence in the state court proceedings. Petitioner has failed

22

to meed his burden to show error.

## VII.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondent's motion for summary judgment (doc. #12 ) be GRANTED and the petition dismissed.

Further, it is RECOMMENDED that petitioner's motion to hold his petition in abeyance or, in the alternative, to dismiss it without prejudice (doc. #18) be DENIED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 30, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**